**CHABAD–LUBAVITCH OF VERMONT, Rabbi Yitzchok Raskin, Plaintiffs,**

v.

**CITY OF BURLINGTON, Vermont Board of Parks and Recreation Commission, Defendants,**

v.

**AMERICAN CIVIL LIBERTIES FOUNDATION OF VERMONT, INC., Mark A. Kaplan, Esq., Reverend Robert E. Senghas, Defendants/Intervenors.**

**Civ. A. No. 90–327.**

United States District Court, D. Vermont.

Dec. 18, 1990.

**2.** Vt.Stat.Ann. tit. 8, §§ 3541(b), (c) (1984).

David G. Webbert, Miller, Cassidy, Larroca & Lewin, Washington, D.C., Robert D. Rachlin, Christopher D. Roy, Downs, Rachlin & Martin, Burlington, Vt., for plaintiffs.

John L. Franco, Jr., Burlington, Vt., for defendants.

Richard T. Cassidy, Hoff, Agel, Curtis, Pacht & Cassidy, Burlington, Vt., Steven K. Green, South Royalton, Vt., for defendants/intervenors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

PARKER, District Judge.

This Court is presented once again with the question of the constitutionality of the display of a sixteen-foot tall menorah in City Hall Park in downtown Burlington, Vermont, during the eight days of Chanukah. In *Kaplan v. City of Burlington,* 891 F.2d 1024, 1029–30 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990), the Second Circuit Court of Appeals, relying on the recent decision of the United States Supreme Court in *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), held that the unattended, solitary display of the menorah "some 60 feet away from the westerly steps of City Hall" in Burlington was in violation of the Establishment Clause of the First Amendment.[1] In light of a number of factual differences between the displays of past years, at issue in *Kaplan,* and the display proposed for view this Chanukah season, the question of the display's constitutionality must be determined anew.

On December 7, 1990, plaintiffs requested a Temporary Restraining Order and preliminary and permanent injunctive relief preventing the City of Burlington and the Vermont Board of Parks and Recreation Commission (hereafter "City") from denying plaintiffs' application for a permit to display their menorah in City Hall Park. The American Civil Liberties Foundation of Vermont, Inc., Mark A. Kaplan, Esq. and Reverend Robert E. Senghas were granted status as intervenors under Fed.R.Civ.P. 24(a).

A hearing was held on December 10 and 11, 1990. The Court issued an oral ruling from the bench on the afternoon of the 11th, finding that the display of the menorah as proposed would be unconstitutional. The following findings of fact and conclusions of law supplement that ruling.

## FINDINGS OF FACT

Based on a stipulation of facts entered by the parties on December 10, 1990, as well as evidence received through testimony, exhibits, and an on-site view of the menorah as proposed for display in City Hall Park held on December 11, the Court finds as follows.

1. Every December since 1986, the City has permitted the religious Jewish organization, Chabad–Lubavitch of Vermont, to display its private menorah in City Hall Park in downtown Burlington[2] during the eight days of Chanukah. The two and one-half acre park is bounded on the east by City Hall and two other buildings, and by streets on its other three sides.

2. The menorah, a nine-pronged candelabra, is the primary visual and religious symbol associated with Chanukah, an annual Jewish holiday celebrating the rededication of the Temple of Jerusalem in ancient times.[3]

---

1. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Establishment Clause has long been held applicable to the states. See *Wallace v. Jaffree,* 472 U.S. 38, 48–55, 105 S.Ct. 2479, 2485–89, 86 L.Ed.2d 29 (1985).

2. The park and environs are described in *Kaplan v. City of Burlington,* 700 F.Supp. 1315, 1317–18 (D.Vt.1988) (Billings, J.).

3. The significance of Chanukah and the menorah are discussed in *County of Allegheny v. American Civil Liberties Union,* 109 S.Ct. at 3095–97, and sources cited.

3. This year Chanukah is celebrated from sundown on Tuesday, December 11, until sundown on Wednesday, December 19.

4. The menorah erected each year, and proposed for display this year, was constructed in Burlington of wrought iron and measures approximately 12 feet wide by 16 feet high.

5. The Park is a traditional public forum and the site of considerable "First Amendment" activity.

6. Private organizations have always been allowed to erect private displays in the Park. For example, a non-profit educational foundation known as "Beyond War" has erected a permanent "Peace Garden," including a world globe mounted on a wooden post, for the purpose of promoting world peace, and there are unattended, solitary war monuments permanently erected by private groups. In addition, private groups have been permitted to erect temporary structures, such as tents, as part of their activities lasting more than a single day.

7. Varied activities sponsored by religious organizations have also been approved in the park since 1982, including a "Jesus Rally," a festival of gospel singing and music, a festival of Israeli folk dancing and acoustic music sponsored by a Christian congregation, a "Bike for Peace" rally held by the First Unitarians, an anti-abortion rally held by religious groups, a vigil commemorating the explosion of the atomic bomb at Nagasaki sponsored by a local Catholic group, and a food and clothing distribution to the poor by the Maranatha Church of Williston, Vermont.

8. This year the City approved the application of a private citizen, Stephen C. Brooks, to erect in City Hall Park from December 10 through January 2 a holiday display (hereafter "Brooks display") that celebrates primarily the secular values of peace and liberty.

9. The Court viewed the Brooks display in location on December 11. It is composed of two connected signs, each printed on a four-foot by eight-foot plywood board. The two boards are mounted on posts approximately eight feet tall, the bottom long edge of each board clearing the ground by about four feet, and the posts are set so that the two boards, joined along their four-foot edge, form an obtuse angle—viewed from overhead, the display would appear as a wide "V" slightly less than sixteen feet across.

10. One sign of the Brooks display has "SEASON'S GREETINGS!" and "AN AMERICAN SALUTE TO LIBERTY!" printed in large letters. In smaller letters is printed: "During this holiday season, let all of us be reminded that we are the keepers of the flame of liberty. It is our legacy of freedom which all of the world looks upon for faith in the future." A dove circling the globe is depicted. The other sign has the headings "PEACE ON EARTH" and "HAPPY HOLIDAYS!" and lists the word "peace" in eight different languages. The sign includes a stylized picture of an angel. Both signs state in small letters "Sponsored by Stephen C. Brooks."

11. The Brooks display is erected a few feet from the College Street sidewalk on the north edge of City Hall Park. The messages on the signs are visible to passersby on College Street and the adjacent sidewalk, but not from elsewhere in the Park or the surrounding streets. Indeed, from most viewpoints within the Park, only the back of the display is visible, and appears as two blank white sheets of plywood held upright on posts.

12. During the Court's view of the site, the menorah was temporarily erected in its proposed location. It stood a few feet to the west of the Brooks display, slightly farther back from College Street. The menorah is sixteen feet tall but is less wide than the Brooks display and, by its nature, does not block a viewer's field of vision as does the Brooks display. While the two displays were in close proximity, neither clearly overshadowed the other. However, from numerous vantage points throughout the Park, the menorah was visible and identifiable, while the Brooks display, as noted, appeared only as blank plywood.

13. The menorah was (and would be, if the City were required to grant a permit) positioned so that the wide "face" of the candelabra was parallel to the line of vision of a viewer standing on the sidewalk of College Street looking at the menorah with City Hall forming the backdrop, looking, that is, in a southeasterly direction. Such a viewer would see the menorah edge-on, rendering it less obtrusive. Plaintiffs attempted, in short, to display the menorah in a manner designed, given the confines of City Hall Park, to avoid its association with City Hall and city government. However, there are numerous views where both the "face" of the menorah and City Hall remained in the field of vision.

14. The menorah would be erected along with a sign stating that it is sponsored by Lubavitch of Vermont. The unlighted sign is visible from College Street.[4]

15. As in the past, the menorah would be erected with no government involvement and no expense to the City.

16. By letter dated November 28, 1990, plaintiffs sought permission from the City to display the menorah alongside the Brooks display as part of a combined holiday display.

17. On November 30, 1990, the City filed a Complaint for declaratory relief with this Court indicating that it would not grant plaintiffs' permit application unless the Court authorized such action.

18. Although the Parks Board held a meeting on December 3, 1990 to consider plaintiffs' application, it withheld permission solely out of concern that such an approval would violate the Establishment Clause and expose the City to the risk of liability for attorneys' fees.

19. On December 5, 1990, this Court dismissed the suit filed by the City as unripe.

20. On December 6, 1990, counsel for the City sent a letter to counsel for plaintiffs advising them that the City had formally denied plaintiffs' application based solely on the City's view that the combined holiday display would likely fail under the Establishment Clause.

21. Burlington has numerous other parks that are not so closely associated with city government.

22. A large Christmas tree adorns the Church Street Marketplace, a section of Church Street closed to vehicular traffic. The Marketplace is the heart of Burlington's shopping district.

23. City Attorney John Franco expressed his willingness to Rabbi Raskin of Chabad–Lubavitch to aid plaintiffs in acquiring a permit for display of the menorah in the Marketplace.

24. In past years, plaintiffs have held a public lighting ceremony at the menorah in City Hall Park. Rabbi Raskin agreed to forego the ceremony this year if the Court were to find that the display was otherwise constitutional.

## CONCLUSIONS OF LAW, OPINION AND ORDER

The City's refusal to permit plaintiffs to display their menorah in City Hall Park unquestionably burdens the rights of plaintiffs to free speech and free exercise of religion under the First Amendment. As the restriction is based upon the content— the religious import—of plaintiffs' speech in a public forum, it will not pass constitutional muster unless it is necessary to serve a compelling governmental interest and is narrowly drawn to achieve that interest. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 945–46, 74 L.Ed.2d 794 (1983). The only governmental interest asserted by the City here, of course, is the avoidance of endorsing religion in violation of the Establishment Clause. "Observance of the constitutional mandate of the Establishment Clause may properly be characterized as a compelling governmental interest, and a prohibition limited to displays of unattended, solitary religious symbols on public property would be narrowly tailored to

---

**4.** Plaintiffs have indicated they would consider lighting the sign on the menorah if that were necessary to ensure the constitutionality of the display. The visibility of the sign during evening and night hours is not a critical factor in the Court's decision, however.

serve that end, since it would allow the continued use of City Hall Park for all other uses." *Kaplan,* 891 F.2d at 1030 (citation omitted).

It is clear, under *Kaplan,* that the unattended, solitary and semi-permanent display of plaintiffs' menorah in close proximity to City Hall in Burlington's City Hall Park "conveys a message of government endorsement of religion in violation of the Establishment Clause," *id.* at 1028, "given that Park's close association with the seat of city government," *id.* at 1030. The doctrine's rationale is explained in *Allegheny:*

> Whether the key word is "endorsement," "favoritism," or "promotion," the essential principle remains the same. The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from "making adherence to a religion relevant in any way to a person's standing in the political community."

109 S.Ct. at 3101 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 687, 104 S.Ct. 1355, 1366–67, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)).

It is also evident, however, that constitutional questions in this area closely turn on the factual context of the religious display at issue. See *id.* 109 S.Ct. at 3102 (opinion by Blackmun, J.) (constitutionality of religious display depends on particular physical setting). Our decision in the present case thus requires an assessment of the significance of the differences of setting between the display proposed this year and the displays found unconstitutional in *Kaplan.*

Two differences are obvious and are emphasized by plaintiffs. First, plaintiffs attempted this year to exhibit the menorah next to the Brooks display, which bears a primarily secular holiday message. Second, plaintiffs planned to exhibit the menorah on the north edge of the Park near College Street, farther from City Hall than the displays of past years. As a result, City Hall would not appear as a backdrop to the menorah when viewed from most vantage points. We agree with plaintiffs

that these facts have constitutional significance, and might, in another case, be dispositive. We conclude, nonetheless, that under all the factual circumstances of this case the proposed display would convey a message to an objective observer of government endorsement.

We evaluate first the impact of the Brooks display. In *Allegheny,* the Supreme Court considered the constitutionality of two displays on public property in downtown Pittsburgh. The first, a creche depicting the Christian nativity scene, was placed prominently by itself inside the Allegheny County Courthouse. Five members of the Supreme Court found the display unconstitutional. 109 S.Ct. at 3104–05. The second display was an 18–foot menorah owned by Chabad, erected just outside the City–County building next to the city's 45–foot decorated Christmas tree, along with a sign bearing a secular "salute to liberty." Six members of the Court found that the display did not offend the Establishment Clause. *Id.* at 3111–15 (opinion by Blackmun, J.), 3122–24 (opinion by O'Connor, J.), 3138–40 (opinion by Kennedy, J., joined by Rehnquist, C.J., White and Scalia, JJ.). Both Justices Blackmun and O'Connor, the "swing votes" in this instance, emphasized the presence of the Christmas tree in upholding Pittsburgh's decision to allow the display of the menorah outside a government building. Blackmun wrote:

> [T]he relevant question for Establishment Clause purposes is whether the combined display of the tree, the sign, and the menorah has the effect of endorsing both Christian and Jewish faiths, or rather simply recognizes that both Christmas and Chanukah are part of the same winter-holiday season, which has attained a secular status in our society....
>
> The Christmas tree, unlike the menorah, is not itself a religious symbol.... The widely accepted view of the Christmas tree as the preeminent secular symbol of the Christmas holiday season serves to emphasize the secular component of the message communicated by

other elements of an accompanying holiday display, including the Chanukah menorah.

*The tree, moreover, is clearly the predominant element in the city's display. The 45-foot tree occupies the central position* beneath the middle archway in front of the Grand Street entrance to the City–County Building; the 18–foot menorah is positioned to one side. Given this configuration, it is much more sensible to interpret the meaning of the menorah in light of the tree, rather than *vice versa.* In the shadow of the tree, the menorah is readily understood as simply a recognition that Christmas is not the only traditional way of observing the winter-holiday season. In these circumstances, then, the combination of the tree and the menorah communicates, not a simultaneous endorsement of both Christian and Jewish faith, but instead, a secular celebration of Christmas coupled with an acknowledgment of Chanukah as a contemporaneous alternative tradition.

*Id.* at 3113–14 (emphasis added) (footnote omitted).

Justice O'Connor disagreed with much of Justice Blackmun's analysis, observing that it "obscures the religious nature of the menorah," but she agreed with his conclusion that "the city of Pittsburgh's combined holiday display of a Chanukah menorah, a Christmas tree, and a sign saluting liberty does not have the effect of conveying an endorsement of religion." *Id.* at 3122.

By accompanying its display of a Christmas tree—a secular symbol of the Christmas holiday season—with a salute to liberty, and *by adding a religious symbol* from a Jewish holiday also celebrated at roughly the same time of year, I conclude that the city did not endorse Judaism or religion in general, but rather conveyed a message of pluralism and freedom of belief during the holiday season....

In short, in the holiday context, this combined display *in its particular physical setting* conveys neither an endorsement of Judaism or Christianity nor disapproval of alternative beliefs....

*Id.* at 3123–24 (emphasis added).

Under the views of either justice, it does not appear that the "combined display" in the present case is closely analogous to the Pittsburgh display upheld in *Allegheny.* Unlike a Christmas tree, the Brooks display is identifiable only from one general direction. More important, it does not overshadow the menorah—indeed, it is half the height of the menorah. From many areas within and around the Park, the menorah appears to stand alone, or, at best, adjacent to two pieces of white plywood. An objective viewer could not reasonably conclude that a religious symbol was "added to" a dominant secular display in this instance, only to achieve a celebration of a secular "winter-holiday season," in Justice Blackmun's words, or a "message of pluralism," in Justice O'Connor's. Therefore, we are unable to conclude that the presence of the Brooks display cures the constitutional infirmity of the menorah as proposed for display in City Hall Park.

The second important consideration is the location of the menorah within the Park. In *Kaplan,* the Second Circuit held invalid the display of the menorah "located only some 60 feet away from the westerly steps of City Hall; from the general direction of the westerly public street, the menorah appeared superimposed upon City Hall." 891 F.2d at 1029–30. We do not believe that the proximity to the building is as critical as the fact that the display was in a park the whole of which is associated with City Hall. As stated in *Kaplan:* "The facts here with regard to the menorah are very much like those in *Allegheny* with regard to the creche. The menorah, like the creche in that case, is displayed alone on public property closely associated with a core government function." *Id.* 897 F.2d at 1028. The court also noted: "City Hall is closely identified with this particular city park, as its very name and proximity to the seat of municipal authority suggest." *Id.* at 1029 n. 5. Furthermore, while there are fewer angles from which the menorah in its proposed site this year appeared superimposed upon City Hall, it remains that from

at least one well-traveled place on College Street and its sidewalk, City Hall framed the view of the menorah. And from a considerably larger area, both City Hall and the menorah appeared together in the field of vision. We are thus unconvinced that this difference in factual setting from the *Kaplan* case is dispositive.

Certain additional factors of less significance in the present case deserve brief mention. First, while plaintiffs have in the past held a religious lighting ceremony in connection with the display, they have indicated their willingness to forego such a ceremony this year. A lighting ceremony might enhance the religious nature of the overall display, but its absence certainly does not turn a menorah into a secular symbol. It was the *unattended* display of a menorah that the court in *Kaplan* found objectionable.

Second, the menorah has a sign indicating that it is sponsored by the plaintiff Lubavitch. Since, however, the sign is legible only from one side and is unlit at night, and since it does not include a disclaimer of sponsorship or endorsement by the City, we think the presence of the sign is of little avail to plaintiffs. "Even if this display had been accompanied by an express disclaimer of City sponsorship and approval, the pervasive message of government endorsement communicated by this context would not be negated." *Id.* One cannot escape the fact that standing in the shadow of City Hall, one may view the menorah at a number of angles where it stands as a lone symbol, with neither the message on the Brooks display nor the sign claiming Lubavitch sponsorship in view.

Lastly the Court notes the existence of other sites for plaintiffs' display, including one potential location adjacent to a Christmas tree located on the Church Street Marketplace. That location would in all probability raise none of the constitutional concerns that arise in this case. We believe that a reasonable observer could well take this factor into account in deciding whether the proposed display represented an endorsement of the Jewish faith by the City of Burlington.

The Court concludes that plaintiffs' proposed display would violate the Establishment Clause of the United States Constitution. Accordingly, plaintiff's requested relief is DENIED.