936 F.2d 109
 CHABAD-LUBAVITCH OF VERMONT, Rabbi Yitzchok Raskin,
Plaintiffs-Appellants,
v.
CITY OF BURLINGTON, Vermont Board of Parks and Recreation
Commission, Defendants-Appellees,
v.
AMERICAN CIVIL LIBERTIES FOUNDATION OF VERMONT, INC., Mark
A. Kaplan, Esq., Reverend Robert E. Senghas,
Defendants-Intervenors-Appellees.
 No. 1428, Docket 91-7068.
 United States Court of Appeals,
Second Circuit.
 Argued April 29, 1991.
Decided June 21, 1991.
 
 Nathan Lewin, David G. Webbert, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for plaintiffs-appellants.
 Ken A. Schatz, Office of the City Atty. and Corp. Counsel, Burlington, Vt., for defendants-appellees.
 Richard T. Cassidy, Hoff, Agel, Curtis, Pacht & Cassidy, Burlington, Vt. (Steven K. Green, Vermont Law School, South Royalton, Vt., of counsel), for defendants-intervenors-appellees.
 Before OAKES, Chief Judge, WINTER, Circuit Judge, and MUKASEY, District Judge.*
 PER CURIAM:
 
 
 1
 Chabad-Lubavitch of Vermont and Rabbi Yitzchok Raskin (collectively "Lubavitch") appeal from an order of the United States District Court for the District of Vermont, 754 F.Supp. 372, Fred I. Parker, Judge, denying a temporary restraining order and preliminary and permanent injunctive relief preventing the City and the State Board of Parks and Recreation Commission (collectively the "City") from denying Lubavitch's application for a permit to display its menorah in City Hall Park (the "Park").[1] The district court's decision stemmed from its on-site viewing of the menorah, which Lubavitch temporarily erected in the Park on December 11, 1990, next to a secular display. Presumably, the parties intend that the facts stipulated to in the district court remain part of the record on appeal. The most significant of these facts include: 1) the menorah is a religious symbol; 2) the Park is a traditional public forum; 3) the City has traditionally granted permits for private organizations to erect private, secular displays in the Park; 4) the City has allowed various religious activities in the Park since 1982, including a "Jesus Rally," a festival of gospel singing and music; 5) the City approved the application of a private citizen, Stephen C. Brooks, to erect a secular, holiday display in the Park from December 10, 1990 to January 2, 1991; 6) the Brooks display was composed of two connecting signs, each printed on a four-foot by eight-foot plywood board; 7) one of Brooks's signs read "Season's Greetings" and "An American Salute to Liberty," while the other declared "Peace on Earth" and "Happy Holidays;" 8) Brooks placed his display a few feet from the College Street sidewalk on the north edge of the Park; 9) from most viewpoints in the Park, the Brooks display appeared as two blank, white sheets of plywood; 10) Lubavitch sought permission from the City to display the menorah alongside the Brooks display as part of a combined holiday display; 11) in its proposed location, the menorah was to stand a few feet to the west of the Brooks display; 12) from most vantage points in the Park, the menorah would be visible and identifiable, and there were numerous views from which both the menorah and City Hall would remain in the field of vision; 13) the menorah would have an unlighted sign, viewable from only one side, stating that it was sponsored by Lubavitch; 14) Lubavitch would erect the menorah with no involvement by, or cost to, the City; 15) the City denied Lubavitch's application based on its view that the combined holiday display would violate the Establishment Clause; and 16) the City Attorney expressed a willingness to Rabbi Raskin to aid Lubavitch in acquiring a permit to display the menorah in the Church Street Marketplace, a section of a street in the heart of the City in which a large Christmas tree is traditionally placed during the holiday season.
 
 
 2
 On April 4, 1991, the parties also stipulated to several other facts. The April 4 stipulation provides that: 1) Lubavitch erected the menorah in Battery Park, a municipal park approximately one-half mile from the Park from December 11, 1990 through December 19, 1990; 2) the City issued a permit to Lubavitch for this display; 3) Lubavitch affixed the proposed sign, indicating its sponsorship of the display, to the menorah; 4) Rabbi Raskin lighted the menorah several times while it was displayed in Battery Park in the presence of members of his congregation; and 5) Brooks maintained his display in the Park from December 11, 1990 through January 11, 1991.
 
 DISCUSSION
 
 3
 Chanukah 1990 has come and gone, compelling us first to ask whether this case is moot. We believe that we may properly exercise jurisdiction over Lubavitch's claim because it is "capable of repetition, yet evading review." Southern Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The question is "capable of repetition" insofar as Lubavitch intends to seek a permit to display a menorah in the Park every year at Chanukah. Given the short length of Chanukah and the relatively slow pace of litigation, moreover, if the City denies Lubavitch's application next year it is highly improbable that the question will reach us before that Chanukah has passed also. Indeed, here, Lubavitch filed its complaint on December 7, 1990, the district court issued its ruling on Lubavitch's motion for a temporary restraining order on December 18, 1990, and Lubavitch filed its notice of appeal soon thereafter. Only now, however,--some four months later--are we able to consider the matter on appeal. As such it seems clear that this question is "capable of repetition, yet evading review." Id. We limit our analysis, however, to the constitutionality of the display in the Park because the legality of the display in Battery Park is not before us.
 
 
 4
 Here, as in Kaplan v. City of Burlington, 891 F.2d 1024 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990), the issue on appeal is whether the City may allow Lubavitch to display a menorah, measuring approximately 12 feet wide and 16 feet high, unattended in the Park. Relying on County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), we held in Kaplan that the display of an unattended, solitary, semi-permanent, religious symbol in the Park, given the Park's "close association with the seat of city government," violates the Establishment Clause. 891 F.2d at 1030. In a futile attempt to ward off judicial deja vu, Lubavitch cites inconsequential factual differences between Kaplan and this case. Specifically, Lubavitch emphasizes that the permit application proposed to place the menorah next to a secular display, and that, because the proposed location of the menorah was farther from City Hall than the location of the menorah in Kaplan, City Hall would not appear as a backdrop to the menorah when viewed from most vantage points. With regard to the first distinction, Lubavitch unsuccessfully attempts to liken the menorah's proximity to the Brooks display to the combined menorah-Christmas tree display bearing the message "salute to liberty" that the Court upheld in Allegheny. However, the majority in Allegheny upheld the display because, when viewed as a whole, the display did not leave the viewer with the sense that the government endorsed any particular religion. See 109 S.Ct. at 3111-15 (opinion of Blackmun J.); id. at 3122-24 (opinion of O'Connor, J.); id. at 3138-40 (opinion of Kennedy, J. joined by Rehnquist, C.J., White, J., and Scalia, J.). Here, by contrast the viewer could not view the menorah and the Brooks displays "as a whole" because they were not to appear as a single display, nor so far as appears from the record were they originally conceived as a unitary symbol. Moreover, the menorah, with its inherently religious message, was visible from almost all vantage points, whereas the Brooks display looked like nothing more than two blank pieces of plywood from almost all vistas. As to Lubavitch's second factual distinction, every square foot of the Park is linked to the seat of municipal government, and any attempt to carve the Park into areas that do or do not have a direct view of City Hall is therefore meaningless for purposes of the Establishment Clause.
 
 
 5
 Lubavitch's legal arguments fare no better than its factual ones. Although Lubavitch wishes otherwise, neither this Court nor the Supreme Court has overturned Kaplan. Contrary to Lubavitch's contention, the Supreme Court's order in Chabad v. Pittsburgh, --- U.S. ----, 110 S.Ct. 708, 107 L.Ed.2d 729 (1989), amounts to nothing more than an enforcement of its ruling that the proposed display in Allegheny did not violate the Establishment Clause. See id. We assume that if the Supreme Court had wanted to change an area of law as complex as the Establishment Clause, it would have done so through a written opinion, or opinions, rather than via an order. In addition, Board of Educ. v. Mergens, --- U.S. ----, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), is factually distinguishable from this case for the same reason that its predecessor, Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), was distinguishable from Kaplan: it involved an open forum, with live speakers, in a public university. Mergens, 110 S.Ct. at 2372; Kaplan, 891 F.2d at 1030. As we observed in Kaplan, " 'an open forum in a public university does not confer any imprimatur of state approval on religious sects or practices'.... The same cannot be said be said of the City's permission to display an unattended, solitary religious symbol in City Hall Park, given that Park's close association with the seat of city government." Kaplan, 891 F.2d at 1030 (citation omitted).
 
 
 6
 Accordingly, we affirm the order of the district court.
 
 
 
 *
 The Honorable Michael B. Mukasey, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Via a last-minute stipulation, dated April 4, 1991, the parties agreed to consolidate the hearing on the preliminary injunction with a trial on the merits