17 F.Supp.2d 1068 (1998)
AMERICAN CIVIL LIBERTIES UNION, on behalf of its member Scott Weiner, Plaintiff,
v.
CITY OF FLORISSANT et al., Defendants.
No. 4:97CV2528 CDP.
United States District Court, E.D. Missouri, Eastern Division.
September 25, 1998.
*1069 Sally E. Barker, Schuchat and Cook, St. Louis, MO, Denise D. Lieberman, ACLU, American Civil Liberties Union, St. Louis, MO, for plaintiff.
John M. Hessel, Lewis and Rice, St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on plaintiffs motion for preliminary and permanent injunctions. The parties have submitted the matter to the Court on a stipulated record.
Plaintiff ACLU, proceeding on behalf of its member Scott Weiner, seeks injunctive relief and a declaration that a creche erected by the City of Florissant at its Civic Center violated the Establishment Clause of the First Amendment and Article I, section 7 of the Missouri Constitution. Plaintiff filed suit against Florissant and its Mayor, James J. Eagan, under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Following hearings on December 19, and December 22, 1997, the Court denied the *1070 ACLU's motion for a temporary restraining order and set the matter for trial on May 26, 1998. The parties subsequently agreed to submit the matter on a stipulated record and briefing schedule.

I. Findings of Fact

The following findings of facts are based upon the parties' joint stipulation of uncontested facts and the photographs and video-tape submitted into evidence.
1. The Civic Center, located at # 1 Civic Center Drive in Florissant, Missouri, is owned and operated by the City of Florissant with public funds. The Center provides community activities to the city's residents and members of the public. During the 1997 holiday season, the Civic Center held a holiday craft show and a snack with Santa Claus and sponsored a house decorating contest.
2. The Civic Center grounds are bounded by Waterford Drive on the west and Parker Road on the north. Civic Center Drive, which runs past the building on the south and east sides, connects at either end to Waterford Drive and Parker Road. There are parking lots on the east and west sides of the building and a large public recreational park to the south.
3. The main entrance is on the south side of the building, facing Civic Center Drive. The main entrance fronts a large courtyard, approximately 90 feet by 110 feet. The sole approach to the main entrance is a sidewalk and short flight of stairs that lead to the courtyard. There are rectangular lawns on the east and west sides of the courtyard. A deciduous tree and small sapling grow in the east lawn; an evergreen grows in the west lawn. The courtyard, lawns, and main entrance are not visible from the north, northwest, and east portions of the Civic Center grounds, but can be seen from the lobby of the building and from a large grass plaza, a rose garden, and a recreational park, which lie to the south of the building. A second, smaller, entrance is located on the east side of the building.
4. In late November 1997, Florissant's Director of Parks and Recreation directed the erection of holiday decorations on the Civic Center grounds as follows:
A. A creche scene was placed on the lawn on the east side of the courtyard, near the base of the deciduous tree. The scene depicted the manger in Bethlehem following the birth of Jesus of Nazareth as described in Luke 2:4-7 and Matthew 2:11 of the New Testament Bible. The creche occupied an area that was approximately 5 feet by 20 feet and consisted of a roofed stable, with bales of hay placed inside and adjacent to the stable. Three-dimensional figures of Mary, Joseph, and the infant Christ in a manger were placed under the stable roof. Figures of the three wise men and two kneeling camels were placed in front and to the sides of the stable. The scene also contained two short sections of fencing behind the figures of the wise men. From the perspective of a viewer standing on the sidewalk and facing the creche, the creche was placed in the center of the far side of the lawn, with the tree a short distance to the right. No other decorations were placed in this area at this time.
B. Letters spelling out "Seasons Greetings" appeared on the portico to the main entrance, extending 4 feet by 43 feet and covering the permanent "Civic Center" sign. A painted sign, dimensions 4 feet by 8 feet, read "SEASONS GREETiNGS" in large letters, with "CITY OF FLORISSANT" appearing below in smaller letters. The "i" in "GREETiNGS" was topped by a five-pointed yellow star. The sign was flanked by two 5½-foot-tall striped candy canes. This sign was placed at the front of the west lawn, adjacent to the short flight of stairs leading to the main entrance. Anyone entering the courtyard and main entrance would have to walk past the sign.
C. A wreath, 8 feet in diameter, was placed on a wall flanking the short stairway approaching the courtyard and main entrance. The wreath would not have been in the line of sight of a viewer standing on the sidewalk facing the creche, but would have been passed by the same viewer when approaching the courtyard.
D. Seven banners, 3 feet by 6 feet, were hung on light poles on Civic Center Drive. The words "Joy-Love-Peace-Seasons-Greeting" and "Happy Holidays" appeared on the banners.

*1071 E. Two decorated Christmas trees, 7 feet tall, were placed in the building. One stood in the main lobby. The second tree was placed on the lower level and was not visible from the main entrance.
5. Florissant has erected this or a similar display for several years. All items used in the display were purchased, stored, assembled, maintained, and serviced with City residents' tax dollars.
6. Plaintiff Scott Weiner, a Florissant resident, lives approximately three blocks from the Civic Center and regularly travels past the Center. Plaintiff attended public functions at the Civic Center during the holiday season with members of his family and observed the items described above. Plaintiff Weiner is not a member of the Christian faith. He was offended by the creche and believed that it represented an endorsement of Christianity.
7. On December 1, 1997, the ACLU wrote a letter to the City Attorney and the Mayor requesting immediate removal of the creche as an unconstitutional endorsement of Christianity. The City Attorney responded by letter on December 10, 1997, stating the City's position that the creche did not represent an impermissible endorsement of Christianity and declining to remove it.
8. After Florissant received the ACLU's letter, the City added the following decorations to the Civic Center display:
A. Two 5½-foot-tall reindeer with red ribbons around their necks were placed in front of the evergreen tree in the west lawn area to the left of the painted sign, A 6-foot-tall cut-out Santa Claus with a sack of presents, a 4½-foot-tall cut-out reindeer, and a 3-foot-tall cut-out candy cane were placed in a group to the far left of the main entrance.
B. Several additions were made to the east area, which previously held only the creche scene, the deciduous tree, and the sapling. A three-dimensional, 4-foot-tall snowman, flanked by two cut-out pictures of gift boxes, was placed in the front left corner.[1] Several feet to the right of the snowman, but still to the left of the creche, was placed a scene consisting of a cut-out lamb and donkey reclining in front of a 5-foot-tall arch bearing the words "Joy to the World" with an eight-pointed star at the top. A grouping consisting of a 3-foot-tall decorated Christmas tree, three 3-foot-tall cut-out candy canes and four wrapped gifts appeared in the front right corner of the lawn, well to the right side of the creche. Ten shorter cut-out candy canes and five cut-out lollipops were placed at the perimeter of both lawns.
C. Garland was wrapped around tree trunks, stair railings, and fence chains.
9. The City of Florissant erected "Seasons Greetings" signs at other public locations, including City Hall and the police station.
10. Don Michael, Florissant's Director of Parks and Recreation, was responsible for the erection of the 1997 display. Mr. Michael would testify that the purpose of the display was to promote the spirit of goodwill, cheer, and peace connected to the holiday season. Mr. Michael would further testify that there was never a purpose to endorse religious belief or offend users of the Civic Center.
11. Florissant intends to erect a display similar to the augmented display described above during the 1998 holiday season.
12. There is no evidence that Florissant erects any other displays of any kind at the Civic Center to mark other holidays throughout the year.

II. Discussion

Plaintiff contends that Florissant's creche violates the Establishment Clause of the First Amendment. The Establishment Clause prohibits government from promoting or affiliating with any religious doctrine or discriminating among persons on the basis of religious beliefs.[2]County of Allegheny v. ACLU, 492 U.S. 573, 590-91, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). Not only must government refrain from promoting one religion *1072 over another, it must also avoid promoting religion over nonreligion. American Jewish Congress v. City of Chicago, 827 F.2d 120, 124 (7th Cir.1987). The First Amendment thus protects the individual's right to make decisions regarding religion and faith based upon the dictates of her own conscience, free from "compulsion or interference by government." ACLU v. City of Birmingham, 791 F.2d 1561, 1563 (6th Cir.1986), cert. denied, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). See also Allegheny County, 492 U.S. at 590, 109 S.Ct. 3086 ("It is settled law that no governmental official ... may violate these fundamental constitutional rights regarding matters of conscience."); American Jewish Congress, 827 F.2d at 124.
The line between permissible and impermissible relationships between government and religion is "blurred, indistinct, and variable ... depending on all the circumstances of a particular relationship." Lynch v. Donnelly, 465 U.S. 668, 678-79, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (quoting Lemon v. Kurtzman, 403 U.S. 602, 614, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). In determining whether a specific governmental act is constitutional, the courts ask whether the practice has either "the purpose or effect of `endorsing' religion."[3]Allegheny County, at 592, 598, 109 S.Ct. 3086. See also Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 115 S.Ct. 2440, 2448, 132 L.Ed.2d 650 (1995) (discussing application of the endorsement test to government action); Bauchman v. West High School, 132 F.3d 542, 551-52 (10th Cir.1997) (endorsement test now widely accepted as controlling analytic framework for Establishment Clause cases), cert. denied, ___ U.S. ___, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998); Schundler, 104 F.3d at 1444 n. 6 (determining that the endorsement test is properly applied to Establishment Clause challenges to religious displays). Under the Establishment Clause, government action may not "appear[] to take a position on questions of religious belief or ... `mak[e] adherence to a religion relevant in any way to a person's standing in the political community.'" Allegheny County, 492 U.S. at 593-94, 109 S.Ct. 3086 (quoting Lynch v. Donnelly, 465 U.S. 668, 687, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)). Endorsement is prohibited because it "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." Lynch, 465 U.S. at 688, 104 S.Ct. 1355 (O'Connor, J., concurring).
The Supreme Court's religious display cases comprise a multitude of opinions and approaches. Despite the Court's "shifting majorities," Kaplan v. City of Burlington, 891 F.2d 1024, 1028 (2nd Cir.1989), cert. denied, 496 U.S. 926, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990), the opinions make it clear that courts must engage in close examination of the facts of each case with careful consideration of contextual factors. See Allegheny County, 492 U.S. at 597, 109 S.Ct. 3086 ("the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context."); Doe v. City of Clawson, 915 F.2d 244, 247 (6th Cir.1990) (identifying three factors to be considered in applying the endorsement test: the context of the display, the composition of the display, and the location of the display). A brief consideration of the Lynch and Allegheny County opinions is useful to set out the known limits on religious displays.[4]
*1073 In Lynch, the Supreme Court addressed the constitutionality of a city-owned nativity scene. The scene, which was purchased, maintained, and erected with public money, depicted the infant Jesus, Mary, Joseph, angels, shepherds, kings, and animals. The creche was erected in a private park in the shopping district, amidst a "winter wonderland" scene consisting of lights and numerous secular figures, also owned by the city.[5] The majority concluded that, in the context of the Christmas season and numerous secular figures, the nativity scene did not impermissibly advance religion. Lynch, 465 U.S. at 687, 104 S.Ct. 1355. Justice O'Connor, in a separate concurrence, emphasized that "the overall holiday setting" while not "neutralizing" the religious and sectarian significance of the creche "negate[d] any message of endorsement of that content," making the display a mere part of the government's holiday celebration. See id. at 692, 104 S.Ct. 1355. The dissenters also applied an endorsement analysis but disagreed that the setting negated the religious content, concluding that the creche sent a message to nonadherents that "their views are not ... worthy of public recognition." Id. at 701, 104 S.Ct. 1355 (Brennan, J., dissenting).
The Court next examined public display of religious symbols in Allegheny County. Two displays were challenged. The first was a creche placed on the central stairway of the county courthouse. The second was a menorah placed outside a building which housed the city's principal offices. In several different opinions,[6] the Court held that the creche violated the Establishment Clause while the menorah did not. The differences between the two displays thus are instructive.
The creche was placed on the Grand Stair-case of the county courthouse, under an angel-borne banner reading "Gloria in Excelsis Deo." A plaque identified that the display was donated by the Holy Name Society. Poinsettias and small evergreens framed the display. There were no other displays or figures on the staircase. The creche was used as the backdrop for the county's Christmas-carol program. A majority of the Court concluded that the creche endorsed "a patently Christian message"  glory to God for the birth of the infant Jesus  and was thus a violation of the Establishment Clause. Allegheny County, 492 U.S. at 598, 109 S.Ct. 3086. Justices Blackmun and O'Connor both distinguished Lynch on the basis of the contexts of the displays, noting that the disapproved creche stood alone in the seat of government. Id. at 599-600, 626, 109 S.Ct. 3086.
The mere placement of a display with religious content on public property does not violate the Establishment Clause: in Allegheny County, six justices found that the city's display of a menorah was not unconstitutional.[7] The display consisted of a 45-foot Christmas tree placed in the middle arch of three that formed an entrance to the City-County Building. A sign bearing the mayor's name and a "Salute to Liberty" was placed at the base of the tree. Several *1074 weeks after the Christmas tree was erected, the city placed an 18-foot menorah next it. The menorah was owned by a private Jewish group, but stored, erected, and removed by the city.
After examining the Hanukkah holiday, Justice Blackmun concluded that the menorah, unlike the creche, had both religious and secular significance. The Christmas tree, a symbol that once had religious connotations is now recognized as a secular symbol. Its placement next to the menorah emphasized the latter's secular aspects. Id. at 613-17, 109 S.Ct. 3086. Justice O'Connor viewed the menorah as a wholly religious object but found that its religious nature was negated by the secular elements of the display  the Christmas tree and sign. Thus, the menorah's presence in this context was not an endorsement of religion, but rather "conveyed a message of pluralism and freedom of belief during the holiday season." Id. at 634-35, 109 S.Ct. 3086.
Courts of Appeals applying the endorsement test have, like the Supreme Court Justices in Lynch and Allegheny County, reached contrary results. See Bauchman, 132 F.3d at 552 ("[E]ven the Justices who have adopted the endorsement test do not agree on how it should be applied," citing James M. Lewis & Michael L. Vild, A Controversial Twist of the Lemon: The Endorsement Test as the Establishment Clause Standard, 65 Notre Dame L.Rev. 671 (1990)); see also, e.g., Elewski v. City of Syracuse, 123 F.3d 51 (2nd Cir.1997) (city's creche display in public park did not violate Establishment Clause), cert. denied, ___ U.S. ___, 118 S.Ct. 1186, 140 L.Ed.2d 317 (1998); Schundler, 104 F.3d at 1445-446 (city display of creche, menorah, and Christmas tree in City Hall Plaza violated Establishment Clause); Gonzales v. North Tp. of Lake County, Ind., 4 F.3d 1412 (7th Cir.1993) (memorial crucifix in public park impermissibly endorses Christianity); Chabad-Lubavitch of Vermont v. City of Burlington, 936 F.2d 109 (2nd Cir.1991) (pre-Capitol Square case determining that display of menorah in City Hall Park would violate the Establishment Clause because of the park's close association with City Hall), cert. denied, 505 U.S. 1218, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992); Doe v. City of Clawson, 915 F.2d 244 (6th Cir.1990) (nativity scene on front lawn of city hall did not violate establishment clause); American Jewish Congress v. City of Chicago, 827 F.2d 120 (7th Cir. 1987) (nativity scene in City Hall lobby unconstitutional despite disclaimers and secular displays in lobby; the nativity scene was self-contained, rather than element of a larger display). See also Kreisner v. City of San Diego, 1 F.3d 775, 782 (9th Cir.1993) (city did not endorse religion by permitting private group to erect religious display in public forum; however, had the same display been erected by the government, "its overwhelming message of the glorification of the divinity of Jesus Christ would violate the Establishment Clause."), cert. denied, 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994).
Under the endorsement test as previously applied, the context in which a government-owned display occurs determines its constitutionality.[8] In examining the present *1075 matter, the Court concludes that the relevant context includes the initial display that prompted the ACLU's complaint to the city. Thus, the Court's analysis begins with the display as it was initially erected.
The creche is an unambiguously Christian symbol. See Schundler, 104 F.3d at 1445 ("A creche represents the Christian belief that Jesus was born to the Virgin Mary to lead humankind on a path toward salvation and redemption."); City of Birmingham, 791 F.2d at 1566. While the creche is associated with the winter holiday season, that association alone has not diminished the religious importance of the symbol. See Allegheny County, 492 U.S. at 601, 109 S.Ct. 3086 (government may acknowledge Christmas as a cultural phenomenon, but may not observe it as a Christian holy day).
The religious content of particular displays can be altered by the context in which they appear. Thus, government funded museums can display religious paintings because the museum setting "negates" any message that the government endorses the religious message. Lynch, 465 U.S. at 692, 104 S.Ct. 1355 (O'Connor, J., concurring). Similarly, publicly-funded creches that are part of a larger holiday celebration pass constitutional muster. See id. As Allegheny County makes clear, government cannot rely on the holiday season alone to provide a secularizing context. However, the presence of clearly secular decorations, ornaments, displays, or banners convey to the viewer that the religious display is included in recognition of the historical roots of the holiday.
Florissant's initial decoration of the Civic Center was remarkably devoid of secular displays. The only human or animal figures that appeared in the initial decoration were those forming the creche. Certainly, the wreath, "Season's Greetings" signs and banners, two candy canes, and two Christmas trees inside the building, did not have the narrative force of the creche, and did not form competing "focal groups" with "their own story to tell" that could send a secular message capable of "negating" the Christian message of the creche. Indeed, the creche stood virtually alone, sharing the east lawn only with a tree which enhanced rather than detracted from its impact. The banners, while proclaiming secular messages, do not send the same message of "pluralism and freedom of belief" that Justice O'Connor found in the mayor's sign in Allegheny County.[9]
Defendants contend that the Civic Center is insufficiently associated with the core functions of government for it to send a message of endorsement. While the Civic Center is not the seat of city government, it is still a public building, maintained for public functions and paid for with public money; the Court does not believe that the City can insulate a religious message from constitutional scrutiny by choosing to send it from a setting at the periphery of government functioning.
Florissant's original display was constitutionally more like the creche on the Grand Staircase of the County Courthouse of Allegheny County than the one that appeared as part of the "winter wonderland" of Lynch. The erection of the creche at the main entrance of the Civic Center impermissibly sent a message to the "reasonable observer" that the Christian religion was relevant to the City of Florissant and thus to an individual's standing in the political community.
Having concluded that the original display violated the Establishment Clause, the Court also concludes that defendants' subsequent modifications did not rescue the display from impermissible endorsement. The context of this particular display includes the period during which the unconstitutional *1076 creche was erected. The secular figures that the city added to the display after the ACLU's complaint were insufficient to negate or muffle the earlier message of endorsement. See Schundler, 104 F.3d at 1450-51 (district court erred by finding that addition of secular figures "desanctified" unconstitutional display). The City's insistence that the display is indistinguishable from the one in Lynch thus fails. Furthermore, even if the City had begun its holiday celebration with the display as it appeared in its final manifestation, the Court does not believe it would have recreated the "winter wonderland" setting in Lynch, but would have instead violated the Establishment clause, because of the prominence and dominance of the creche within the modified display.
Plaintiff contends that the display also violates Article I, section 7 of the Missouri Constitution, which states that:
no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion ... and that no preference shall be given to nor any discrimination made against any church, sect or creed of religion, or any form of religious faith or worship.
The Court has not located any cases addressing the application of Article I, Section 7 to religious displays. The Missouri Supreme Court has, however, addressed this provision in other contexts, and has repeatedly recognized that the Missouri constitution provides a stronger and more explicit requirement of separation of church and state than does the federal constitution. See Paster v. Tussey, 512 S.W.2d 97, 100 (Mo. en banc 1974), cert. denied 419 U.S. 1111, 95 S.Ct. 785, 42 L.Ed.2d 807 (1975)(holding unconstitutional a state statute which would have allowed state funds to be used for purchase of textbooks at parochial schools); see also, e.g., Americans United v. Rogers, 538 S.W.2d 711, 719 (Mo. en banc 1976), cert. denied 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976); Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609 (1941). While this state constitutional interest has been held not to be a compelling state interest justifying interference with a party's rights under the first amendment to the United States Constitution, see Widmar v. Vincent, 454 U.S. 263, 276, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), it poses no such conflict here. Defendants urge that the Missouri Supreme Court would interpret this provision in accordance with the federal constitution, but they have not done so when considering the provision in other contexts. This Court believes that in the Establishment Clause context of this case, the Missouri constitutional provision provides an alternate, and stronger, basis for granting the injunction sought by plaintiff. The city admittedly spent public funds on the holiday display, including the creche, and spent public funds in erecting and displaying the creche. Based upon the plain meaning of the constitutional language, the city impermissibly used public funds "in aid of" the Christian religion and expressed a "preference" for the Christian religion. Because both versions of the Florissant display sent a clear message of endorsement of Christianity, the defendants violated the Missouri Constitution.

III. Conclusion

The holiday display erected by the City of Florissant at the Civic Center in late November 1997 violated the Establishment Clause of the First Amendment of the United States Constitution and Article I, section 7 of the Missouri Constitution. Moreover, even after the City modified the display, it continued to violate both the Establishment Clause and the Missouri Constitution.
Plaintiff asks the Court to permanently enjoin defendants from erecting a creche or other religious symbols on public property. Because the federal constitutional inquiry is context-specific, the Court could not issue such a generic injunction, if the federal constitutional claim were the only basis for the request. Under those circumstances, a more limited injunction would be appropriate, most likely one enjoining the city from erecting the same display as erected at any point in time in 1997, or one substantially similar to that evolving display. The Court need not determine, however, what more limited injunction would be proper under the federal claim, because under the Missouri Constitution it is clear that state funds cannot be used for such a display, and *1077 so the very broad injunction sought by plaintiff is appropriate.
The Court will permanently enjoin defendants from erecting any display including a creche or other religious symbols at the Civic Center or on other public property in the City.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion for permanent injunction is granted.
IT IS FURTHER ORDERED that plaintiff's motion for preliminary injunction and to show cause [# 5-2, 5-3] is denied as moot.
NOTES
[1] (From the perspective of a viewer standing on the sidewalk facing the creche.)
[2] Government is also prohibited from delegating governmental authority to a religious institution, or involving itself too deeply in a religious institution's affairs.
[3] Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) provides the standard Establishment Clause test. Under Lemon, a contested governmental act is constitutional only if (1) it has a secular purpose; (2) its primary effect neither advances or inhibits religion; and (3) it does not foster an excessive entanglement with religion. Id. at 612-13, 91 S.Ct. 2105. The second prong of Lemon is predominant in the religious display cases and has been refined to ask whether the display impermissibly "endorses" religion. See Harris v. City of Zion, Lake County, Ill., 927 F.2d 1401, 1411-12 (7th Cir. 1991) (using endorsement test in applying Lemon's effect prong), cert. denied, 505 U.S. 1229, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992); see also ACLU v. Schundler, 104 F.3d 1435, 1441 (3rd Cir.1997) (discussing Supreme Court religious display cases), cert. denied, ___ U.S. ___, 117 S.Ct. 2434, 138 L.Ed.2d 195 (1997).
[4] The more recent Capitol Square case addressed whether the state could deny the KKK's application to place a cross in a public park. The majority formulated the issue in Capitol Square as one regarding state regulation of private religious expression in a public forum, thus implicating the Free Speech and Free Exercise Clauses of the First Amendment. The majority's consideration of the Establishment Clause was limited to determining whether government's interest in complying with its dictates was sufficiently compelling to justify content-based restrictions on speech and declined to apply the endorsement test to private rather than governmental speech. Capitol Square, 115 S.Ct. at 2446-47.
[5] The city's display included a Santa Clause House with a live Santa Clause handing out candy, reindeer pulling Santa's sleigh, A 40-foot Christmas tree strung with lights, statues of carolers, candy-striped poles, a talking wishing-well, a large banner saying "SEASONS GREETINGS," a miniature village, and several cut-out figures. Each group of figures had its own "focal point" or "story to tell." Allegheny County, 492 U.S. at 596, 598, 109 S.Ct. 3086.
[6] Justice Blackmun wrote an opinion for the Court adopting Justice O'Connor's endorsement formulation from Lynch and finding the creche to be unconstitutional. Justice Blackmun also wrote a separate analysis finding that the menorah was constitutional. Justice O'Connor separately applied the endorsement test to reach the same result. Justices Brennan and Stevens wrote opinions, joined in by Justice Marshall, finding both displays to be unconstitutional endorsements. Justice Kennedy, writing for four justices, would have found both displays to be permissible.
[7] Four of the six justices would also have found the creche to be constitutional. Only Justices Blackmun and O'Connor found the creche and the menorah to be constitutionally distinct.
[8] Courts consistently apply the "reasonable observer" standard to determine whether a particular display sends a message of endorsement. See Capitol Square, 115 S.Ct. at 2455 (O'Connor, J., concurring in part and dissenting in part), at 2458 (Souter, J., concurring in part and dissenting in part); at 2466, (Stevens, J., dissenting); Allegheny County, 492 U.S. at 620, 109 S.Ct. 3086 (Blackmun, J.), at 631, 109 S.Ct. 3086 (O'Connor, J. concurring); Lynch, 465 U.S. at 692-93, 104 S.Ct. 1355 (O'Connor, J., concurring); Elewski, 123 F.3d at 54; Schundler, 104 F.3d at 1448. There is no consensus, however, regarding the characteristics of this reasonable observer. Justice O'Connor believes that the reasonable observer should be deemed to be "aware of the history and context of the community and forum in which [a] religious display appears." Capitol Square, 115 S.Ct. at 2455 (determining that the placement of a cross in a public park by the KKK would not send a message of endorsement). Justice Stevens, by contrast, believes that it "is especially important" to consider the viewpoint of the nonadherent reasonable observer. Id. at 2466, 2470 (Stevens, J., dissenting) (concluding that the placement of the cross violated the First Amendment). Courts of Appeals are similarly divided. Compare Elewski, 123 F.3d at 54-55 (reasonable observer of display would know that downtown merchants encouraged display and that city actively attempted to accommodate requests for additional displays and events) with Schundler, 104 F.3d at 1448 ("[W]e must take into account the perspective of those citizens within the community who hold minority religious views."). The Court finds that it is unnecessary to determine the characteristics of the "reasonable observer" in this matter because the record is devoid of evidence regarding "the history and context of the community and forum." For instance, there is no indication that the Civic Center site is part of a commercial effort to increase shopping for city merchants or that the site is regularly used for secular displays during the year.
[9] The City asserts that its display does not proclaim the glory of God as did the creche in Allegheny County. Among the additions to the scene following the ACLU's complaint, is a depiction of an archway with a donkey and lamb reclining before it. The arch bears the words "Joy to the World" and a star. The Court notes that this phrase refers to the joy for the birth of a savior. The added animals, of course, are among those traditionally associated with the creche.