**John DOE, Plaintiff–Appellant,**

v.

**CITY OF CLAWSON,
Defendant–Appellee.**

No. 89–2271.

United States Court of Appeals,
Sixth Circuit.

Argued July 24, 1990.

Decided Oct. 1, 1990.

Denenfeld, Detroit, Mich., for plaintiff-appellant.

Reed D. Rubinstein (argued), Jon H. Kingsepp, Howard & Howard, Bloomfield Hills, Mich., for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

John Doe[1] appeals the district court's grant of summary judgment for the City of Clawson, Michigan, in this action challenging the display of a nativity scene on public property. For the reasons that follow, we affirm.

## I.

On December 15, 1987, John Doe filed the present action alleging that the City of Clawson, Michigan, intentionally violated his constitutional rights guaranteed by the Establishment Clause of the First Amendment of the United States Constitution by displaying a nativity scene on the front lawn of the Clawson City Hall. Doe's complaint sought a preliminary injunction, a declaratory judgment, a permanent injunction and monetary damages.

The nativity scene was located at the entrance of the Clawson City Hall. The creche is a lawn display which includes figures of the infant Jesus, Mary and Joseph, all in a stable, and surrounded by a large angel, three kings, three wise men, two shepherds, three sheep, two camels and a donkey. The display also includes four evergreen trees with lights and stars, two Christmas gift packages with large bows, a Santa Claus figure standing nearby at the corner of the building, a large "Noel" sign, and holiday roping on the building. Decorated lampposts, "Seasons Greetings" sign, roping, colored lights and candles adorned the public library across the street from the Clawson City Hall. Both parties submitted photographs and videotape of the creche and the surrounding area to the district court. At oral

Robert A. Sedler (argued), Wayne State University Law School, Detroit, Mich., Paul

1. In an affidavit filed under seal with the district court, John Doe was identified *in camera* to establish his standing and to verify the court's jurisdiction.

argument, counsel for plaintiff-appellant John Doe acknowledged that the entire display includes the public library and its decorations.

Following a hearing, the district court denied Doe's application for a preliminary injunction. In July 1988 the parties filed cross-motions for summary judgment; however, in November 1988 the district court ordered a stay of the case pending the decision of the United States Supreme Court in *Allegheny County v. American Civil Liberties Union*, —— U.S. ——, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). After the Supreme Court's decision in *Allegheny*, the parties filed supplemental briefs and the district court heard oral argument on the cross-motions for summary judgment. On October 3, 1989, the district court granted summary judgment for the City of Clawson, holding that the adorned nativity scene did not convey a government endorsement of religion in violation of the Establishment Clause. This timely appeal followed. The principal issue on appeal is whether the nativity scene display is unconstitutional.

## II.

Doe argues that display of the nativity scene violates the Establishment Clause by conveying a message of endorsement of Christianity because the nativity scene *dominates* the Christmas holiday season display. On the other hand, the City of Clawson asserts that its display of the nativity scene during the national holiday season is constitutional because the creche is sufficiently *adorned* with secular symbols so as not to convey a message of government endorsement of religion. The Supreme Court's decision in *Allegheny* is controlling of this appeal.

In *Allegheny*, the Supreme Court held that the display of a creche in a courthouse violated the Establishment Clause, but the display of a Chanukah menorah in front of a government building was constitutional. The creche was placed on the Grand Staircase of the Allegheny County Courthouse,

and was surrounded by red and white poinsettia plants, but no other figures or decorations appeared on the staircase.[2] At the entrance of the nearby City–County Building, the City of Pittsburgh placed an eighteen-foot Chanukah menorah next to a forty-five-foot Christmas tree and a sign saluting liberty.

The display at issue in the present case falls somewhere between the two displays reviewed in *Allegheny*. Thus, determining the constitutionality of the display requires careful consideration of the Court's holding in *Allegheny*. The Second Circuit has identified three different positions adopted by the Supreme Court Justices in *Allegheny*. First, "three members of the Court (Justices Brennan, Marshall and Stevens) would not allow, or would create a strong presumption against, the publicly supported display of obviously religious symbols. . . ." *Kaplan v. City of Burlington*, 891 F.2d 1024, 1028 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2619, 110 L.Ed.2d 640 (1990). "Two members of the Court (Justices Blackmun and O'Connor) would regard the physical context of the display as most significant. . . ." *Id.* And, "[f]our members of the Court (Chief Justice Rehnquist and Justices White, Scalia and Kennedy) would allow display of a religious symbol so long as it did not 'represent an effort to proselytize'. . . ." *Id.* (quoting *Allegheny*, 109 S.Ct. at 3139).

The variety of views expressed by the Justices created "shifting majorities." *Kaplan*, 891 F.2d at 1028. Five members of the Court (Justices Brennan, Marshall, Blackmun, Stevens and O'Connor) agreed that the creche violated the Establishment Clause, while six members of the Court (Chief Justice Rehnquist and Justices White, Blackmun, O'Connor, Scalia and Kennedy) agreed that the menorah display was constitutional. Because Justices Blackmun and O'Connor provided the swing votes for the majorities, consideration of their opinions may prove most helpful in discerning the proper constitutional standard.

---

**2.** Two large wreaths were placed in the arched windows behind the staircase, and two small

evergreen trees stood alongside the manger backdrop.

In Part III–B of his opinion, Justice Blackmun adopts the endorsement analysis suggested by Justice O'Connor's concurring opinion in *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). Justice Blackmun summarized the standard as being whether the display in its " 'particular physical setting[ ],' has the effect of endorsing or disapproving religious beliefs." *Allegheny*, 109 S.Ct. at 3103. Justice O'Connor explained that "the endorsement test depends on a sensitivity to the unique circumstances and context of a particular challenged practice...." *Id.* at 3120 (O'Connor, J., concurring). The endorsement test requires focusing "on the specific practice in question in its particular physical setting and context in determining whether government has conveyed or attempted to convey a message that religion or a particular religious belief is favored or preferred." *Id.* at 3124 (O'Connor, J., concurring).

From Part IV of Justice Blackmun's majority opinion in *Allegheny*, we identify three factors considered by the Court in applying the endorsement test. These three factors may be summarily stated as context, composition, and location. The first factor is derived from *Lynch*, in which the Court held that "the focus of our inquiry must be on the creche in the *context* of the Christmas season." 465 U.S. at 679, 104 S.Ct. at 1362 (emphasis added). Although *Allegheny* somewhat modifies the *Lynch* decision by adopting Justice O'Connor's endorsement test, adherence to the Christmas holiday context as an important factor is evident in the *Allegheny* opinion. For example, the majority observes that "*Lynch* teaches that government may celebrate Christmas in some manner and form, but not in a way that endorses Christian doctrine." *Allegheny*, 109 S.Ct. at 3105. Although the context factor is easily satisfied by displaying the creche during the Christmas holiday season, the national holiday context is essential to validate the display of the religious symbol.

The second factor to consider is the composition of the display. In *Allegheny*, the Court observed that the display in *Lynch*

"comprised a series of figures and objects, each group of which had its own focal point." 109 S.Ct. at 3104. In *Lynch*, "Santa's house and his reindeer were objects of attention separate from the creche, and had their specific visual story to tell." *Id.* at 3104. In contrast, the Court noted that the creche displayed in the Allegheny County Courthouse was "the single element of the display on the Grand Staircase." *Id.* The Court concluded that "unlike in *Lynch*, nothing in the context of the display detracts from the creche's religious message." *Id.* at 3103–04. On the other hand, the composition of the menorah display was one factor which made the display constitutional. In her concurring opinion, Justice O'Connor concluded that the "combined display" of the menorah, a Christmas tree, and a sign saluting liberty conveyed a "message of pluralism" which did not endorse Judaism or Christianity nor disapprove of alternative beliefs. *Allegheny*, 109 S.Ct. at 3123–24 (O'Connor, J., concurring).

A third factor identified in *Allegheny* is the location of the creche. The Court noted that the creche was located on the Grand Staircase of the county courthouse, the seat of county government. *Id.* The Court held that "by permitting the 'display of the creche in this particular physical setting,' the county sends an unmistakable message that it supports and promotes the Christian praise to God that is the creche's religious message." *Id.* at 3104 (citation omitted). In a footnote, the Court added that display of the creche in the county courthouse did not raise the kind of "public forum" issue presented by display of a privately owned creche in a public park. *Id.* at 3104 n. 50; *see McCreary v. Stone*, 739 F.2d 716 (2d Cir.1984), *aff'd sub nom. Board of Trustees of Scarsdale v. McCreary*, 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985) (privately owned creche displayed in public park).

In her concurring opinion, Justice O'Connor noted a distinction between the creche in *Lynch* "which was displayed in a private park in the city's commercial district as part of a broader display of traditional secular symbols of the holiday season," and

the display of the solitary creche in the Allegheny County Courthouse. *Id.* 109 S.Ct. at 3118–19. Justice O'Connor observed, "The display of religious symbols in public areas of core government buildings runs a special risk of 'mak[ing] religion relevant, in reality or public perception, to status in the political community.'" *Id.* at 3119 (quoting *Lynch,* 465 U.S. at 692, 104 S.Ct. at 1369 (O'Connor, J., concurring)). However, in her opinion finding the menorah display to be constitutional, Justice O'Connor neither emphasized nor diminished the fact that the menorah was located outside a city-county office building.

Although decided prior to *Allegheny,* our decision in *American Civil Liberties Union v. City of Birmingham,* 791 F.2d 1561 (6th Cir.), *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986), is consistent with *Allegheny* because we applied Justice O'Connor's endorsement analysis. 791 F.2d at 1563; *see also American Civil Liberties Union v. Wilkinson,* 895 F.2d 1098, 1103 (6th Cir.1990) (noting that *Birmingham* is consistent with *Allegheny*). Moreover, we implicitly considered the context, composition, and location of the display in deciding that the creche violated the Establishment Clause by endorsing Christianity.

In *Birmingham,* we first noted the Supreme Court's admonition "that the display must be viewed 'in the proper context of the Christmas Holiday season.'" 791 F.2d at 1566 (quoting *Lynch,* 465 U.S. at 680, 104 S.Ct. at 1363). We concluded that in the context of the celebration of Christmas as a national holiday, "the City of Birmingham had a secular purpose for displaying the creche—to promote a feeling of joy and goodwill...." 791 F.2d at 1566.

We also considered the composition of the display and noted that the creche stood alone, unaccompanied by any secular symbols, thus calling "attention to a single aspect of the Christmas holiday—its religious origin." *Id.* We observed, "When surrounded by a multitude of secular symbols of Christmas, a nativity scene may do no more than remind an observer that the holiday has a religious origin." *Id.* However, "A creche standing alone without any of the nonreligious symbols of Christmas affirms the most fundamental of Christian beliefs—that the birth of Jesus was not just another historical event." *Id.*

We also considered the location of the creche in deciding whether the display constituted an endorsement of religion. The city-owned creche was displayed on the front lawn of the Birmingham, Michigan, city hall. *Id.* at 1561. We concluded, "It is difficult to believe that the city's practice of displaying an unadorned creche on the city hall lawn would not convey to a non-Christian a message that the city endorses Christianity." *Id.* at 1566. Thus, we held that the unadorned creche displayed on the city hall lawn violated the Establishment Clause by endorsing Christianity.

▮ The preceding discussion reveals weaknesses in the arguments of the parties to the present case. Doe argues that when a nativity scene dominates a Christmas holiday season display, the display is unconstitutional because the dominant creche conveys a message of endorsement of Christianity. Dominance alone is not controlling on the question of whether or not a given religious display such as a nativity scene constitutes an endorsement of religion. Rather, dominance is considered within the composition of the display. The City of Clawson's adornment argument more closely describes the endorsement test, but adornment alone also is not decisive. Adornment of a creche with secular symbols may satisfy the composition factor, but the holiday context and the location of the display must also be considered.

▮ Applying the endorsement analysis of *Allegheny* in the present case, we conclude that the Clawson creche display is constitutional. First, the creche is displayed in the context of the Christmas holiday season. The creche is part of the annual Christmas holiday displays sponsored by the City of Clawson. In the context of celebrating Christmas as a national holiday, "inclusion of the creche in the display served only to depict the historical origins of the celebration." *Birmingham,* 791 F.2d at 1565.

As earlier stated, the nativity scene in this case is a lawn display at the Clawson City Hall which includes figures of the infant Jesus, Mary and Joseph, all in a stable. Three kings, three wise men, two shepherds, three sheep, two camels, and a donkey surround the area, and an angel appears above the stable. The display also includes two evergreen trees with lights and stars on both the left and right side of the nativity scene, with Christmas gift packages beneath the trees. A large Santa Claus figure stands nearby at the corner of the building, a large "Noel" sign is attached to the roof of the building, and there is also holiday roping on the building. Decorated lampposts, a "Season's Greetings" sign, roping, colored lights and candles adorn the public library across the street from the Clawson City Hall. As earlier stated, at oral argument, counsel for John Doe acknowledged that the entire display included the public library and its decorations. *Cf. Allegheny*, 109 S.Ct. at 3104 n. 48 (decorations elsewhere in the Allegheny County Courthouse were not part of the creche display).

Thus, the Clawson Christmas display includes more than the unadorned creche which was held to be unconstitutional in *Allegheny*, but it also has fewer secular symbols than were present in the display held to be constitutional in *Lynch*. For the sake of comparison, the present display is most similar to the Chanukah menorah display upheld in *Allegheny*. Both displays include a religious symbol, a secular symbol, and a sign. However, proper constitutional analysis requires more than a physical comparison of the displays.

Like the display in *Lynch*, the Clawson display "comprised a series of figures and objects, each group of which had its own focal point." *Allegheny*, 109 S.Ct. at 3104. The Santa Claus figure standing near the corner of the building "obviously was a center of attention separate from the creche." *Id.* Similarly, the "Noel" sign on

the building is also an object having "its own focal point." *Id.* Moreover, the public library decorations "were objects of attention separate from the creche, and had their specific visual story to tell." *Id.* Thus, the secular symbols included in the composition of the display detracted from the creche's religious message. A reasonable observer of the display would likely conclude "that the combined display is an effort to acknowledge the cultural diversity of our country and to convey tolerance of different choices in matters of religious belief or nonbelief by recognizing that the winter holiday season is celebrated in diverse ways by our citizens." *Allegheny*, 109 S.Ct. at 3123 (O'Connor, J., concurring).

■ The location of the display on the lawn of Clawson City Hall is more problematic. Displaying the creche in this "particular physical setting" implies that the display has the support and approval of the City of Clawson and creates a risk of "mak[ing] religion relevant, in reality or public perception, to status in the political community." *Lynch*, 465 U.S. at 692, 104 S.Ct. at 1369 (O'Connor, J., concurring). However, the location factor must be evaluated in light of the message conveyed by the display.

In *Allegheny*, the solitary creche displayed in the county courthouse conveyed a "religious message," 109 S.Ct. at 3104, while the menorah, Christmas tree, and sign displayed outside the city-county building conveyed a "message of pluralism." *Id.* at 3123 (O'Connor, J., concurring). Thus, although both displays appeared on government property, the different messages conveyed by the displays made the former unconstitutional and the latter constitutional. Because the "combined display" in the present case conveys a "message of pluralism," we conclude that its location on the lawn of Clawson City Hall does not violate the Establishment Clause because the display does not convey an endorsement of Christianity.[3]

---

3. Doe argues alternatively that the display violates the entanglement prong of the Establishment Clause because the creche is displayed in such a way as to desecrate the religious nature

of the symbol. However, Doe has raised this argument for the first time on appeal, and we will not address this issue because it was not

**250**

### III.

Accordingly, for the reasons stated, the district court's grant of summary judgment is AFFIRMED.

presented to the district court. *Sigmon Fuel Co. v. TVA*, 754 F.2d 162, 164–65 (6th Cir.1985).